HEARD MAY, 1876.

## *Ex Parte* BARNWELL.

*Mandamus* does not lie to compel the Treasurer of the State to issue, under the Act of December, 1873, "to reduce the volume of the public debt and provide for the payment of the same," a bond or certificate of stock for one-half the amount of interest claimed by the holder to have accrued after its maturity on a certificate of stock which had been issued under the Act of June, 1838, for rebuilding the city of Charleston, and which by its terms was redeemable in 1870, and bore no interest on its face after that time.

*Mandamus* does not lie to compel an officer to perform an act where it is at least doubtful whether it is his duty, under the terms of the law which is claimed to have created the duty, to perform it.

This was a petition by Catherine O. Barnwell to the Supreme Court for a writ of *mandamus* against the State Treasurer to compel him to issue to her a bond or certificate of stock for one-half the amount of interest claimed to be due to her by the State on a certain certificate of stock issued under the Act of June 1, 1838, "for rebuilding the city of Charleston," and which was held by her as guardian.

The facts of the case are fully stated in the opinion of the Court.

*Magrath,* for petitioner:

The claim of the petitioner is for certain interest which she claims to be due to her as the holder of a certain certificate of stock, and is presented, in the language of the Act of the 22d December, 1873, for "interest orders upon interest due upon certain certificates of stock, as aforesaid, to the date aforesaid." The question for this Court is whether upon a certificate of stock redeemable in 1870, but not redeemed, interest is due to the 1st of January, 1874, when it was redeemed. In other words, can interest be claimed as such on a debt after it is due?

In *Langton* vs. *The South Carolina Railroad Company,* (2 S. C., 248,) this Court ruled that in a bond bearing interest at six per cent., if default be made in payment, the legal rate of interest will be allowed. In that case the Court said "the principle has been too long established to be the subject of doubt at this day" that it will be allowed,—however hitherto it had been doubted whether it was to be recovered as interest under the contract or as compensation in the way of damages for the detention of the debt. In *Wistar, Sister & Price* vs. *Robinson,* (2 Bail., 274,) Judge Harper, who pronounced the opinion of the Court, allowed the interest

*eo nomine.* In *Ryan* vs. *Baldrick,* (3 McC., 268,) Judge Nott said : " Why may not interest be allowed by the name of interest as well as by way of damages ? * * Interest is always given by way of damages * * on notes of hand, bills of exchange ; * * it may be given under the name of interest. And I see no reason why it may not be given in every case of contract for * * the payment of money, whether expressed or implied."

In *Williams* vs. *Sherman,* (7 Wend., 109,) it is ruled that all contracts to pay undoubtedly give a right to interest from the time when the principal ought to be paid.

In *Brainard* vs. *Jones,* 18 N. Y., (4 Smith,) 37, Judge Comstock said : "After that they were in default, and during the continuance of that default, interest is due from them as in any other case where money is not paid when the creditor becomes entitled to it."

In *Aurora City* vs. *West,* (7 Wall., 105,) Judge Clifford, for the Supreme Court, said : "Interest, as a general rule, is due on a debt from the time that payment is unjustly refused. * * Being written contracts for the payment of money, * * it is quite apparent, on general principles, that they should draw interest after payment of the principal is unjustly neglected or refused. * * Where there is a contract to pay money on a day fixed and the contract is broken, interest, as a general rule, is allowed."

In *Morton, Bliss & Co.* vs. *The Comptroller General,* (4 S. C., 448,) this Court said : " Where a sovereign State enters into a contract of borrowing with an individual, it assumes to be bound in all particulars as an individual, under the like circumstances, would be bound—by what is expressed or properly implied by the terms of such contract. The measure of the obligation is that applied to individuals."

The Act " to reduce the volume of the public debt and provide for the payment of the same " was approved December 22, 1873. The first Section provided for the reduction of the principal; the second Section for the reduction of the interest; and the 1st of January, 1874, was designated as the time beyond which interest should not be calculated. The terms of the Act are very plain : " Which have accrued or will accrue on the 1st of January, 1874." The Act makes no distinction between the interest which has accrued or that which will accrue. The coupon, which is the evidence of interest which has accrued, is included in the description of " coupons upon the bonds before mentioned which have accrued."

The interest orders upon interest due upon certificates of stock *to the date aforesaid* are placed in the same position with the coupon.

It is impossible to conceive why the State should acknowledge its liability for the interest upon a bond and not upon the certificate of stock. The coupon of the bond and the interest order for interest on the certificate of stock differ only in the extent to which they are negotiable. The coupon represents interest due on the bond; the interest order represents interest due upon the certificate of stock; and both represent the indebtedness of the State.

The interest upon its indebtedness, as set forth in the first Section of the Act, and for which it had arranged a compromise for its settlement, was, of course, two kinds: coupons and interest orders upon interest due upon certificates of stock "which have accrued" at the time when the Act became of force or which "will accrue on the 1st of January, 1874."

The terms of the Act are as full and precise as they can be. It is the duty of the State Treasurer to receive from this petitioner the interest orders she offers to fund, according to the second Section of the Act referred to; and, as that officer has refused to do so, this Court is now asked to command him to do that which the State has required of him.

*Melton*, Attorney General, contra, filed a printed brief, in which he contended that, under the terms of the Act of December, 1873, it was not so clearly made the duty of the State Treasurer to issue bonds or certificates of stock for interest which was claimed to have accrued after the original certificates became due and payable; that *mandamus* would not lie to compel him to issue such certificates.

The opinion of the Court was delivered by

Moses, C. J. The petitioner, Catherine O. Barnwell, as guardian, was the holder and owner of a certificate of stock to the amount of $2,957, issued by the State under the authority and in pursuance of the Act of June 1, 1838, "for rebuilding the city of Charleston," (7 Stat. at Large, 156.) It authorized and directed the Governor, "in the name of the State, to issue bonds or other contracts, to be countersigned by the Comptroller General, not exceeding in all the sum of $2,000,000, $1,000,000 of which shall be payable at the expiration of twenty years, and the other million at the expiration of thirty years, at a rate of interest not exceeding

six per centum per annum, for the purpose of procuring a loan on
the credit of the State to rebuild that portion of the city of Charles-
ton now (then) lying in ruins; that the said bonds or contracts be
issued in such form and for such sums, and the principal and inter-
est be made payable at such times and places, as shall be most effec-
tual in procuring the said loan upon the best terms, either in
Europe or America; and that the faith and funds of the State of
South Carolina be pledged to secure the punctual payment of the
said bonds or contracts, with the interest thereon." The certificate
held by the petitioner was numbered 587, dated 22d September,
1863, for the sum already stated, bearing interest at six per cent.
per annum, payable quarter yearly, and redeemable in the year one
thousand eight hundred and seventy. The Act under which the
certificate was issued was stated and referred to on its face.

On the 22d of December, 1873, the General Assembly, by an Act
entitled "An Act to reduce the volume of the public debt and pro-
vide for the payment of the same," (15 Stat. at Large, 518,) by its
first Section provided for the funding of all classes of securities held
against the State, including the certificates of stock issued under
the Act of 1794, which were redeemable at pleasure, the certificates
of stock issued under the Act of 1838, redeemable in 1870, within
which was comprehended the stock held by the petitioner and other
certificates of stock and bonds of the State, issued under various
specified Acts, from 1856 to March 1, 1870, and redeemable at
different times between 1870 and 1889. With the single exception
of the stock issued under the Act of 1838. At the passage of the
Act of 1873, interest was due and to become due upon all the stock
and bonds to which it referred. The bonds known as the conver-
sion bonds were excluded from the funding provision and were de-
clared null and void.

By the said Section of the Act of 1873, the State Treasurer was
authorized and required to receive from the holders willing to sur-
render the same all the certificates of stock and bonds of the State
issued by virtue of any of the said recited Acts, and to issue to
such parties in exchange for and in lieu of said bonds and stocks
so surrendered other coupon bonds or certificates of stock, as they
may desire, equal in amount to fifty per centum of the face value
of the bonds or certificates of stock so surrendered.

The second Section of the Act provides for the funding in the
like manner of the coupons which have accrued or would accrue on

the 1st January, 1874, and "the interest orders upon interest due upon certificates of stock as aforesaid to the date aforesaid."

The petitioner, on presenting her said certificate to the Treasurer, received in exchange therefor another certificate for the sum of $1,478.51 in conformity with the requirement of the said Act. He, however, refused to deliver to her a certificate for one-half of the interest due, as she contends on her original certificate, from the day on which it was redeemable to the 1st day of January, 1874, and she now seeks the aid of the Court, through its writ of *mandamus*, to compel on the part of the Treasurer the performance of what she avers is a duty prescribed by law and which he has no right to withhold. The respondent for cause alleges that the contract between the State and the holder of the said certificate does not expressly provide for the payment of interest which might accrue after maturity, and he is advised that the State is under no implied obligation to pay it. He submits that no duty is imposed upon him to issue certificates so demanded, wherefore he prays that the said petition be discharged.

From the course of the argument it would appear that the right of the petitioner to the writ depended on the liability of the State for interest after maturity, at the legal rate, where the contract did not so stipulate for its payment. The counsel for the petitioner, in his own language, thus states the proposition, which he submits for the determination of the Court: "The question for this Court is, whether upon a certificate of stock, redeemable in 1870, but not redeemed, interest is due to the first of January, 1874, when it was redeemed?" In other words, "can interest be claimed on such a debt after it is due?" The Attorney General, who represents the respondent, on the other hand did undertake, at great length, to show, both on principle and authority, that interest on a contract with the State was not, as in the case of an agreement between individuals, demandable, as of course, after maturity. He did, however, in a cursory way, contest the issuing of the writ, because the right of the party to have the thing demanded is not ascertained so clearly that no doubt exists as to the duty of the officer to render it.

In our judgment the single question with which we have to deal is, whether the Legislature, by the Act of 1873, has required the State Treasurer to issue to the holders of certificates of the stock of the class surrendered by the petitioner and substituted by the de-

livery of other stock or bonds for one-half of their face value coupon bonds or certificates of stock equal in amount to fifty per centum of the face value of the coupons or interest orders so surrendered from the —— day of —— 1870, to January, 1874?

The use of the term "interest orders" in the second Section of the said Act, in connection with "the coupons upon the bonds," would intimate that to the certificates of stock which issued under it were attached orders for the interest, payable quarter yearly. In point of fact no such orders were attached to the certificates, and when the Legislature, through the Act, speaks of "the surrender" of such certificates, it meant nothing more than that the holder, on receiving his coupon bonds or certificate "of stock" to the amount of fifty per centum for his interest due, should deliver to the Treasurer an order to fund it as required by the Act, so that it might be shown that the interest which had accrued on his old certificate had been paid and satisfied by the delivery of the new one, in conformity with the prescribed directions.

What was the right accorded to the petitioner by the Act and the corresponding duty which it imposed upon the Treasurer? for no matter what was the right, if it was not incumbent on the Treasurer to give it effect by the performance of some duty plainly required of him, the party claiming it must be left to seek its enforcement by some further provision of the Legislature.

"To warrant a Court in granting the writ against a public officer such a state of facts must be presented as to show that the relator has a clear right to the performance of the thing demanded and that a corresponding duty rests upon the officer to perform that particular thing. So the fact that there are such difficulties in the way of performing the duty in question as to render the writ nugatory, if granted, is a sufficient objection to the exercise of the jurisdiction."—High on Extraor. Rem., 32.

"And it may be asserted, as a rule of universal application, that, in the absence of any other adequate and specific legal remedy, *mandamus* will lie to compel the performance of purely ministerial duties plainly incumbent upon an officer by operation of law, or by virtue of his office, and concerning which he possesses no discretionary powers. Or, in other words, whenever a specific duty is required by law of a particular officer, unattended with the exercise of any degree of official judgment, or elements of discretion, and on the performance of which individual rights depend, *mandamus*

is the appropriate remedy for a failure or refusal to perform the duty."—*Ibid*, § 80.

In *Morton, Bliss & Co.* vs. *the Comptroller General*, (4 S. C., 472,) the Court said: "To be entitled to the writ, the relators must show that the respondent is bound to the performance of some specified duty imposed by law, of a ministerial character, and in the performance of which the relators have a legal interest." And again, at p. 473: "A duty is certain when, by law, it must be absolutely performed, and the occasion, mode and term of its exercise are fixed, so that nothing remains subject to the discretion of the officer."

It is not, however, to be understood that a specific duty can only be imposed by terms requiring the performance of some explicit and direct act. It may be created by the imposition on public officers of duties which, though general when regard is had to the whole community, become specific when they affect the legal right of an individual, for the violation or withholding of which no other adequate and sufficient remedy is provided.

The object of the Act of 1873, as its title expresses, was "to reduce the volume of the public debt and provide for the payment of the same." Its provisions extended to the whole public debt of the State, in the shape of bonds or stock, save and except the bonds known as conversion bonds, which were declared null and void.

The stock for which the petitioner held a certificate was not only then past due, but of all the securities recited on which the Act was to bear it was the only class which had matured. All of the other issues continued to bear interest, at least to the time fixed for their redemption. It is clear that in providing by the second Section for the interest, the first was only to apply to the principal. The interest on all the other bonds and stock was still accruing, because the time for their redemption had not arrived. If the stock in question had alone been the subject of the Act, the duty on the Treasurer to allow the interest until January, 1874, and deliver a coupon bond or certificate of stock for half its value would have been clear and express, admitting of no doubt as to the intention of the Legislature, and would have devolved on the Treasurer a duty which the Court would have enforced. Embracing the bonds and certificates not due, and on which interest was still running against the State, leaves the question in so much doubt that to allow the writ would be in direct contradiction "of

a fundamental rule underlying the entire jurisdiction of *mandamus*, and specially applicable in determining the limits to the exercise of the jurisdiction over public officers. That rule is, that in all matters requiring the exercise of official judgment, or resting on the sound discretion of a person to whom a duty is confided by law, *mandamus* will not lie either to control the exercise of that discretion or determine upon the decision which shall be formally given."—High on Ex. Rem., § 62.

The words of the Act, however, leave the intention of the Legislature questionable, and to grant the writ would impose on the Treasurer a responsibility to which he should not be subjected, unless the construction contended for by the petitioner admitted of no doubt. The bonds not yet due carry coupons for the interest until their maturity. On the certificates of stock not yet redeemable, interest, by the promise on their face, is payable until they fall due. The first day of January, 1874, was fixed as the common day on which all the coupons then due were to be substituted by the issue of coupon bonds or certificates of stock (as the holder might desire) "equal in amount to fifty per centum of the face value of the coupons surrendered." So, of the interest of the stock falling due up to and on the said day, no difficulty can arise as to the ministerial duty which devolves on the Treasurer as to such interest; but as to interest on bonds or stocks accruing after the time the principal falls due, the judgment of the Treasurer must be exercised to determine not only whether such interest is due by the State, but whether he is required by the terms of the Act to provide for it by the issue of new coupon bonds or certificates of stock to the amount of fifty per centum of its face value.

The doubt is by no means removed when it appears that the General Assembly, in providing for claims against the State, in many instances, has not only directed the payment of the principal, but also the interest which had accrued on them from the time they fell due. When, therefore, no instruction is given as to the interest, no presumption of any acknowledgment of liability for it should arise against the State from the absence of an express provision in regard to it.

Though the State could not rightfully subject the holder of the bonds or stocks to the alternative of accepting its provisions as the condition of a payment of any portion of them, or submitting to

the loss of the whole, still if he does accept what must be viewed in the light of a compromise he must be held to the terms of the Act. A positive and immediate benefit was tendered to him by the stipulation for an annual tax for the payment of the interest and the redemption of the principal, while the loss of the whole was endangered by the proviso to the third Section: "That no tax shall ever be levied to pay the interest or principal on any of the class of bonds or certificates of stock mentioned in the first Section as long as such bonds or certificates of stock remain outstanding in their present form." The creditor was without remedy to enforce his demand against the State, and, though its "faith and funds were pledged to secure the said bonds and certificates," he was without power to require the exercise of the first, and was helpless as to any means of compelling the appropriation of the other to his debt. If he was content to take less than was due on the face of the obligation which he held, and the terms of the Act leave doubtful the amount of interest required to be paid him in bonds or stock by the Treasurer, his only resort is to the honor and good faith of the Legislature. That body, if it has not expressed its proposed purpose so as to carry out the end it contemplated, can declare what it did intend. The Court, however, cannot undertake, by its writ of *mandamus*, to control the "official judgment" of the Treasurer in a matter where it must be admitted "substantial doubt exists as to the duty, the performance of which it is sought to coerce."

The motion is dismissed.

*Wright*, A. J., and *Willard*, A. J., concurred.